Filed 2/2/16  P. v. Cardoza CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>GABRIEL CUEVAS CARDOZA,<br><br>    Defendant and Appellant. | D069074<br><br><br><br>(Super. Ct. No. INF1100744) |

APPEAL from a judgment of the Superior Court of Riverside County, Richard A. Erwood, Judge.  Affirmed.

Sharon M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Annie Featherman Fraser, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Gabriel Cuevas Cardoza of murdering Mary Palacios and attempting to murder Frederico Garza and Jose Garcia.  The jury found that the offenses were

committed with premeditation and deliberation and found true all enhancement allegations. The trial court sentenced Cardoza to an indeterminate sentence of 114 years to life. Cardoza appeals, contending the trial court erred by admitting in rebuttal his recorded interview with a board certified psychiatrist who rebutted evidence that Cardoza had a cognitive disorder and testified that Cardoza was malingering. He also asserts we should independently review the record to determine whether the trial court abused its discretion in finding there was no discoverable material in the coroner's file. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*The Incident*

Cardoza does not challenge the sufficiency of the evidence supporting the jury's findings; accordingly, we briefly summarize the evidence to provide context for the ensuing discussion.

In April 2011, Grace and Phillip Palacios were celebrating their wedding anniversary at their home in Cathedral City with about 50 or 60 other people. At one point, two boys told Jose Garcia, a party guest, that someone, later identified as Cardoza, wanted him outside. Jose approached Cardoza and after a confrontation, Cardoza pulled out a gun and shot Jose. Jose tried to escape, but Cardoza shot him again. Cardoza then pointed his gun at Jose's wife, but she ducked behind a car.

Frederico Garza witnessed the shooting. Cardoza then shot Frederico. Mary Palacios told Cardoza to put the gun down and walked away. Cardoza shot Palacios in the back, killing her. Cardoza then started walking to his home down the block.

2

A guest at the party, Ernest Briseno, fearing that Cardoza would hurt more people, hit Cardoza with his car and then fled the scene on foot. When police arrived they found Cardoza's brother, Guillermo, about 20 feet from Briseno's car with gunshot wounds. It appeared that the car had also hit Guillermo. Guillermo suffered about eight gunshot wounds to his face, chest and abdomen and died from his injuries.

During closing argument, defense counsel argued that Cardoza should be acquitted of all counts because Guillermo committed the crimes that Cardoza was accused of, and one of the party goers shot Guillermo in retaliation and also ran down Guillermo and Cardoza. Defense counsel asserted the Palacios and the Cardoza families were like the "Hatfields and the McCoys," that the Palacios family wanted Cardoza "out of the way" and Cardoza was too drunk to commit the crimes.

*The Trial*

The parties stipulated that when Cardoza was admitted to the hospital after the incident he had a blood alcohol level of .42. A forensic toxicologist testified that some people with an alcohol level of .42 would be dead and this indicated an alcohol abuser with tolerance. At that level, a person is confused, disoriented and unable to make rational decisions.

The defense retained Dr. Gary Miller to perform neuropsychological and psychological tests on Cardoza. Based on his testing, Dr. Miller concluded that Cardoza had a neurocognitive disfunction that could be the result of long-term alcohol abuse.

Although Dr. Miller was not asked to address the issue, he found no evidence of malingering.

Prior to trial, the court ordered Cardoza to submit to a forensic psychiatric evaluation under Penal Code section 1054.3. Dr. Gregory McGowan, a staff psychiatrist at Patton State Hospital, conducted Cardoza's psychological evaluation. The interview lasted over four hours. Dr. McGowan started with casual conversation about things having nothing to do with the case to build rapport, which for Cardoza lasted about an hour and a half. In the next phase of the interview, he asked questions about Cardoza's life. Dr. McGowan then asked about the day of the incident. Finally, Dr. McGowan became very formal and told Cardoza it was time to test him. At this point, Cardoza's demeanor changed, his responses suddenly became very slow and their rapport ended.

Dr. McGowan stated he does not rely on any particular testing to determine whether or not a subject is malingering. Rather, he has a "sixth sense" based on his own particular interviewing technique. Dr. McGowan diagnosed Cardoza with alcohol dependence and concluded that Cardoza suffered from no cognitive defect. Dr. McGowan "very much" disagreed with Dr. Miller's finding that Cardoza suffered a cognitive impairment.

The defense also had Dr. Robert Suiter, a clinical psychologist, perform a psychological examination on Cardoza. Dr. Suiter relied on an interview of Cardoza, documents concerning the offense and reports by Drs. Miller and McGowan. Dr. Suiter found that Cardoza met the diagnostic criteria for alcohol dependence, and it was likely that Cardoza had an alcoholic blackout at the time of the offense.

4

## DISCUSSION

### I. *Rebuttal Testimony of Expert Witness*

A. Background Facts

Prior to trial, defense counsel asked the court to limit what Dr. McGowan could discuss regarding the statements Cardoza made to him. The court stated that Dr. McGowan's testimony would be limited to what was testified to by the defense expert; thus, the court left its ruling open to "see how it goes." The court stated it was important for the jury to see the video to determine whether it corroborated Dr. McGowan's testimony. The prosecutor then noted he was not planning on playing the entire video for the jury, but wanted to see how the defense case went. The court took the matter under submission until after the defense expert testified.

During trial, the parties discussed the issue again. The prosecutor informed the court that defense counsel would be providing information on redacting the video and he did not want to play anything that defense counsel objected to and that might prove to be prejudicial. Defense counsel then objected to the playing of the video, noting that there was a lot of irrelevant "chitchat." Defense counsel indicated he would make redactions if the court was inclined to play the entire tape. The trial court indicated it would play the tape with any requested redactions. The jury then viewed the first portion of the interview that had both video and audio and heard another portion of the interview that had no video component.

B.  Analysis

Cardoza asserts the trial court erred in allowing the tape of the interview to be played to the jury because it contained extraneous, irrelevant and incompetent evidence that should not have been placed before the jury.  He notes that the interview included a range of topics with little bearing on the issues before the jury, such as his physical disabilities and medications, past employment, the food in jail and how often he urinates at night.  Other topics included questions about DNA test results on the gun, any plea bargaining and possible sentencing.  He also contends the tape should have been excluded under Evidence Code section 352 as far more prejudicial than probative and cumulative to Dr. McGowan's testimony.  (Undesignated statutory references are to the Evidence Code.)

Only relevant evidence is admissible.  (§§ 350, 351.)  Relevant evidence is evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action."  (§ 210.)  The trial court has "wide discretion in determining relevance under this standard."  (*People v. Kelly* (1992) 1 Cal.4th 495, 523.)  Under section 352, "[a] trial court may exclude otherwise relevant evidence when its probative value is substantially outweighed by concerns of undue prejudice, confusion, or consumption of time."  (*People v. Scott* (2011) 52 Cal.4th 452, 490.)  A trial court has broad discretion in determining whether to admit or exclude evidence under section 352.  (*People v. Ramos* (1997) 15 Cal.4th 1133, 1170.)

As a threshold matter, we reject Cardoza's argument that the trial court erred by not excluding the entire tape.  As Cardoza tacitly concedes, Dr. McGowan's testimony

6

was relevant rebuttal evidence on the issue of whether Cardoza suffered from a cognitive disorder. We reject Cardoza's contention that the tape was merely cumulative of Dr. McGowan's testimony. Although Dr. McGowan testified that Cardoza's demeanor dramatically changed when he began the "testing" portion of the interview, the best evidence of this change was the tape recording. "Evidence that is identical in subject matter to other evidence should not be excluded as 'cumulative' when it has greater evidentiary weight or probative value." (*People v. Mattson* (1990) 50 Cal.3d 826, 871; *People v. Filson* (1994) 22 Cal.App.4th 1841, 1851 ["the actual sound of defendant speaking contained on the tape would be much stronger evidence than [the deputy's] opinion testimony regarding defendant's condition at the time of his arrest"].)

While we agree portions of the tape could have been excluded without impacting the prosecution's case, defense counsel had the burden of specifying which portions of the tape should have been excluded. Defense counsel and the prosecutor could have reviewed the transcript of the interview together and stipulated to the portions to be excluded and the trial court could have ruled on any portions in dispute. Significantly, the prosecutor agreed to "whatever specific redactions" defense counsel wanted. It appears, however, that defense counsel never requested that specific portions of the interview be redacted. On this record, Cardoza forfeited any contention that the trial court erred in allowing the jury to consider the entire tape without any redactions or limiting instructions. (*People v. Partida* (2005) 37 Cal.4th 428, 433-435.)

To forestall a claim of ineffective assistance of counsel, we reviewed the transcript of Dr. McGowan's interview. (Cf. *People v. Turner* (1990) 50 Cal.3d 668, 708.) Notably,

7

defense counsel may have had a tactical reason for allowing the jury to consider the interview as it allowed Cardoza to talk about the incident, the individuals that witnessed the incident and his theory about what happened without being cross-examined. During closing argument, defense counsel relied on the statements Cardoza made to Dr. McGowan to support Cardoza's defense. (*People v. Lucas* (1995) 12 Cal.4th 415, 442 ["Reviewing courts reverse convictions on direct appeal on the ground of incompetence of counsel only if the record on appeal demonstrates there could be no rational tactical purpose for counsel's omissions."].)

Even assuming we found the trial court improperly admitted portions of the interview into evidence, we would conclude that the admission of this evidence was harmless. The erroneous admission of evidence is not reversible unless it has resulted in a miscarriage of justice, measured under the test of *People v. Watson* (1956) 46 Cal.2d 818, 836. (*People v. Partida*, *supra*, 37 Cal.4th at p. 439; see § 353; Cal. Const., art. VI, § 13.) A miscarriage of justice occurs when it appears that a result more favorable to the appealing party would have been reached in the absence of the alleged errors. (*Watson*, at p. 836; see Cal. Const., art. VI, § 13.) It is Cardoza's burden to demonstrate prejudice. (*People v. Hernandez* (2011) 51 Cal.4th 733, 746.)

Defense counsel argued to the jury that Cardoza should be acquitted because Guillermo committed the crimes. The prosecution, however, presented strong evidence of Cardoza's guilt as at least nine witnesses identified him as the shooter. Although Cardoza had a high blood alcohol level after the shooting, he had previously been pulled over driving a car with a blood alcohol level of .32 percent, was not driving poorly and had no

8

coordination problems getting out of the car. The police officer who had conducted the field sobriety tests on Cardoza expressed surprise when he learned of Cardoza's blood alcohol level based on Cardoza's performance on the tests.

We discern no reasonable probability that the exclusion of the interview or portions of the interview would have raised a reasonable doubt in the minds of the jurors regarding the identity of the shooter or Cardoza's guilt.

## II. *In Camera Review*

A. Background Facts

Joanna Young, a forensic pathologist employed by the Riverside County Sheriff's Department testified about the autopsies she performed. After the jury rendered its verdict, defense counsel learned that Young was the subject of an internal investigation "relating to performance issues." Defense counsel filed a *Pitchess* motion asking for "discovery of law enforcement files and records" related to Young's performance. (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531.) The Riverside County Sheriff-Coroner opposed the motion arguing good cause did not exist for the request. The trial court granted Cardoza's request for an in camera hearing to determine whether there was any evidence that the internal investigation addressed Young's honesty. After the in camera hearing, the court determined there was nothing to be disclosed.

B.  Analysis

Cardoza requests that we independently review the materials examined by the trial court to determine whether the trial court incorrectly withheld any information.  The People object on the ground Young is not a law enforcement officer; thus, the *Pitchess* procedure does not apply.  The Attorney General, however, presented no authority to support this assertion.  Nor was this argument tendered below.  Accordingly, we deem it forfeited.  (*Perez v. Grajales* (2008) 169 Cal.App.4th 580, 591-592 [reviewing courts ordinarily will not consider claims made for the first time on appeal, and such claims "are generally deemed forfeited"]; *People v. Smith* (2003) 30 Cal.4th 581, 616, fn. 8 [appellate courts will not consider perfunctory contentions unsupported by argument].)

In any event, the Attorney General's unsupported argument lacks merit.  Sections 1043 through 1045 and Penal Code sections 832.5, 832.7, and 832.8 codify *Pitchess*. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1226 (*Mooc*).)  The Evidence Code provides a motion procedure for the discovery of "peace or custodial officer" personnel records. (§ 1043, subd. (a).)  Under Penal Code section 830.35, subdivision (c), coroners and deputy coroners are peace officers.  Accordingly, the *Pitchess* procedure applied to Young, a forensic pathologist with the Riverside County Sheriff-Coroner.

The trial court's decision on a *Pitchess* motion is reviewed under an abuse of discretion standard.  (*People v. Prince* (2007) 40 Cal.4th 1179, 1285.)  We review the record for "materials so clearly pertinent to the issues raised by the *Pitchess* discovery motion that failure to disclose them was an abuse of *Pitchess* discretion."  (*People v. Samayoa* (1997) 15 Cal.4th 795, 827.)

10

The trial court can make a record for appellate review by either describing the documents it reviews or ordering them photocopied.  (*Mooc*, *supra*, 26 Cal.4th at pp. 1229-1230.)  Here, the trial court described the documents it reviewed and made an adequate record.  We have conducted an independent review of the transcript and find no abuse of discretion.

DISPOSITION

The judgment is affirmed.

McINTYRE, J.

WE CONCUR:


McCONNELL, P. J.


AARON, J.